FRUGÉ, Judge.
The plaintiffs, Mr. and Mrs. Kaplan, sued for damages totaling $8,250.00 for the alleged wrongful conversion of a 1962 Cadillac which the defendant had seized and sold under executory process. From a judgment of the trial court rejecting their demands, the plaintiffs effected this devol-utive appeal.
Although the facts of this case are rather involved, they may be summarized briefly as follows: Edward (Hess) Curry was the owner of a 1962 Cadillac. He mortgaged that Cadillac in favor of Commercial Securities Company in 1963 and received a title certificate in March, 1964, showing that mortgage. On May 28, 1964, Curry executed a second chattel mortgage in favor of defendant, Associates Discount Corporation, to secure a debt in the sum of $2,260.10. In March, 1965, Curry satisfied the first mortgage held by Commercial Securities and had that mortgage erased from the title certificate. That same month Curry told defendant he had lost the original title, and so he applied for and received a “duplicate” title certificate from the Motor Vehicle Division in Baton Rouge showing a clear title unencumbered by any mortgages. Later, on July 2, 1966, Curry, acting through the name “Auto Merchandizers,” sold the Cadillac to Mr. Kaplan, a plaintiff here, and the price was paid a short time thereafter. Curry, however, did not deliver to Mr. Kaplan a title certificate on the Cadillac until sometime in August, and the certificate which was delivered was not transferred according to law.
What happened was, Curry had either concealed or misplaced the original title certificate, procured a duplicate title certificate, and then negotiated the original title to plaintiffs. Curry endorsed in blank the original title (which showed that the first mortgage was satisfied but did not show the second mortgage) and delivered that to plaintiffs in August, 1966. The endorsement was not complete and was not notarized and witnessed, as required by the Vehicle Certificate of Title Law (R.S. 32 :- 701-32:734). In addition, plaintiffs failed to file an application for a certificate of title in their own name (or at least in Mr. Kaplan’s name) within five days after delivery of the vehicle, as required of him in R.S. 32:707. But even had plaintiffs filed such application, the record does not reveal that they would have discovered the second chattel mortgage; for it is not known on what date Associates Discount did in fact register its mortgage with the Motor Vehicle Division. The duplicate title issued Curry in March, 1965, did not show defendant’s chattel mortgage.
Curry defaulted on his payments to the defendant, and, therefore, on August 18, 1966, the defendant company executed on its chattel mortgage and had the Cadillac seized from the possession of plaintiffs and sold at a sheriff’s sale. Upon seizure of the automobile, the sheriff received from Baton Rouge a certificate, dated September 7, 1966, showing the defendant’s mortgage as the only encumbrance upon the title, and that Curry was the record owner of the car. So apparently the defendant’s mortgage was registered after March, 1965, and *539 before September 7, 1967. Even so, this mortgage was never noted on the face of any certificate of title as required in R.S. 32:706 and 32:710.
Plaintiffs’ contention is that their rights to the automobile were superior to defendant’s rights, and so the seizure of the Cadillac in their possession was an illegal act which makes the defendant liable for damages for wrongful conversion under the case of Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1958).
Conversion is an action in tort which is predicated upon the unlawful act of the defendant. See Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (1957); Edwards v. Max Thieme Chevrolet Co., 191 So. 569 (La.App.2d Cir. 1939); Brian v. Wilson, 81 So.2d 145 (La.App.2d Cir. 1955). Conversely, any action taken in full accordance with law is not conversion. See 18 Am.Jur.2d, Conversion, Sec. 77.
Defendant contends that .the seizure and sale was lawful because the title certificate received by the plaintiffs cannot affect defendant’s rights, which were acquired before the sale of the Cadillac to plaintiffs. In support of this proposition he cites R.S. 32:706 which provides in part:
“[N]o person buying a vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said vehicle until the purchaser shall have obtained a certificate of title to said vehicle [from the commissioner of vehicle registration] * *
Concededly, plaintiffs did not obtain such certificate.
Counsel for plaintiffs maintains that despite the fact that plaintiffs’ title was unmarketable, the sale was completed, and he became the owner of the Cadillac by virtue of C.C. Art. 2456 [1] as of the moment there was an agreement between them and the seller, Curry, as to the object and the price. With this contention we fully agree. See Gooch v. Dick Bohn Ford, Inc., 140 So.2d 903 (La.App.4th Cir. 1962), and authorities cited therein.
Plaintiffs argue that the chattel mortgage cannot affect their rights as owners because .that mortgage was never inscribed on their or any other certificate of title. Thus they contend their rights to the Cadillac are superior to defendants, relying on R.S. 32:710 which states:
“Every such mortgage * * * shall be effective as against third persons as of the time of its execution by the parties if the chattel mortgage is noted on the face of the certificate of title for such vehicle by the commissioner within fifteen days after such date of execution. * * * If the chattel mortgage is not noted on the face of the certificate of title for such vehicle by .the commissioner within fifteen days after its execution it shall be effective as to all persons from the date of notation of the chattel mortgage on the face of the certificate of title for such vehicle by the commissioner * *
See also R.S. 32:706.
The issue for our determination is whether or not the plaintiffs’ rights as owners, under an imperfect title, of an automobile seized from their possession and sold by the defendant were greater than the defendant’s earlier rights as mortgagee, where the defendant’s chattel mortgage bears no legal effect against third persons.
It is our view that a property owner’s right of possession of his property is superior to .the rights of a mortgagee of that property unless the owner’s rights somehow become subject to the mortgage *540 (Cf., C.C. Art. 488). Since plaintiffs knew nothing of the prior mortgage, it cannot be said that they intended to subject their rights to that mortgage. Therefore, unless plaintiffs had some sort of constructive or legal notice of the mortgage, which will give the mortgagee a superior claim to or a priority upon the Cadillac, then the seizure of the automobile by the defendant from the possession of the plaintiffs was wrongful and constitutes conversion.
Defendant’s had no knowledge of the outstanding certificate of title. Nor did the records of the commissioner of vehicle registration disclose that plaintiffs were owners of the Cadillac, since they had not filed for a new certificate of title in their own name. Still, upon the seizure of the automobile, defendant knew .that plaintiffs were claiming ownership of it. Defendant further knew that its chattel mortgage had never been evidenced on the face of any certificate of title; and so it is held to have been aware that its mortgage had no effect as against any third persons (as stated in R.S. 32:710) until after such time as the mortgage was inscribed upon the face of the certificate of title.
We are of the opinion that plaintiffs are third persons to .the mortgage under the meaning of the Vehicle Certificate of Title Law, and as such, the uninscribed chattel mortgage in favor of defendant’s is of no effect against .them. It therefore follows that the plaintiffs’ rights to the automobile were superior to defendant’s rights thereto, and thus, the seizure and sale of the Cadillac on behalf of the defendant was improper and constituted the tort of conversion for which it must now respond in damages.
Defendant contends that inasmuch as plaintiffs failed to enjoin the seizure and sale or to intervene in the proceedings and assert their claim, they thereby forfeited their rights to contest the legality of those proceedings. This contention is predicated upon the assumption that plaintiffs’ exclusive remedies for wrongful seizure and sale of their property were by way of injunction or intervention. See C.C.P. Arts. 1092 and 2751.[2] While it might have been preferable for plaintiffs to have utilized the methods outlined in the Code of Civil Procedure in order to contest the propriety of .the seizure and sale, we find nothing in the cited articles which make intervention and injunction the exclusive remedies for one asserting ownership of seized property.
Article 1092 states in part: “A .third person claiming ownership of * * * property may assert his claim by intervention.” (Emphasis ours.) Similarly, Article 2751 states in part: “The defendant in the ex-ecutory proceeding may arrest the seizure and sale of the property by injunction * * (Emphasis ours.) The language “may assert” and “may arrest” is permissive and not mandatory language.
The facts of this case illustrate a most unfortunate situation, and although we cannot help but sympathize with the defendant’s position, we feel that the rights of plaintiffs, as innocent purchasers, must be protected. Defendant’s redress must be sought from Hess Curry, who appears to be the real wrongdoer.
*541 For the foregoing reasons, the judgment of the trial court is reversed, and the case is remanded in order for the district court to rule upon the amount of damages which should be awarded Mr. and Mrs. Kaplan for the wrongful conversion of their automobile by defendant, Associates Discount Corporation. All costs of the trial court and of this appeal are assessed against the defendant-appellee.
Reversed and remanded.

. Article 2456. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.

. Article 1092. A third person claiming ownership of, or a mortgage or privilege on, property seized may assert his claim by intervention. If the third person asserts ownership of the seized property, the intervention may be filed at any time prior to the judicial sale of the seized property, and the court may grant him injunctive relief to prevent such sale before adjudication of his claim of ownership * * *.
Article 2751. The defendant in the ex-ecutory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the mortgage or privilege is extinguished or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed.